**Bruce BIRDSALL**

v.

**CITY OF HARTFORD, et al.**

**No. CIV.A. 3:01CV565 (SR).**

United States District Court,
D. Connecticut.

March 4, 2003.

---

A. Paul Spinella, Law Offices of A. Paul Spinella & Associates, Hartford, CT, for Plaintiff.

Brian P. Leaming, Halloran & Sage, Hartford, CT, Robert Avery Rhodes, Halloran & Sage, Westport, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT

UNDERHILL, District Judge.

Plaintiff Bruce Birdsall brings this action seeking damages and other relief for claims of deprivation of rights secured by the Constitution, the laws of the United States and the State of Connecticut. The defendants, the City of Hartford, Joseph Croughwell, the Chief of Police of the City of Hartford, Franco Sanzo, a member of the Hartford Police Department's Vice and Narcotics Division, and David Kenary, also a member of the Vice and Narcotics Division, have moved for partial summary judgment on the following claims raised in

Birdsall's complaint: (1) violation of plaintiff's rights under the Fifth and Fourteenth Amendments; (2) unlawful arrest and/or seizure in violation of the United States and Connecticut Constitutions; (3) plaintiff's claims against Chief Croughwell; (4) plaintiff's claims against the City of Hartford; (4) plaintiff's claims alleging intentional and negligent infliction of emotional distress; and (5) plaintiff's claims alleging gross negligence.

For the reasons set forth below, the defendant's Motion for Summary Judgment is granted in part and denied in part.

*Background*

Birdsall was the owner of the Capitol View Restaurant in Hartford, Connecticut. On May 29, 1998 at 11:30 p.m., plainclothes officers from the Hartford Police Department, Vice and Narcotics Division, responded to a report of a possible crime at Birdsall's restaurant. Upon being greeted by Birdsall, the officers identified themselves as members of the Hartford Police Department and indicated that they were there to conduct a liquor inspection. Birdsall alleges that three officers proceeded to his kitchen and began going through a kitchen drawer. Birdsall further alleges that, when he questioned the officers about their search of the drawer, the defendant officers arrested him and physically assaulted him.

Birdsall was charged with breach of the peace, interfering with a police officer, and assault upon a police officer. No violations in connection with Birdsall's restaurant were found that night. On July 13, 1998, all of the charges against Birdsall were nolled, based upon a representation that Birdsall would be making a charitable contribution.

Birdsall claims that his business never recovered from the negative impact of the police raid, his own arrest, and continued harassment by the police department.

Birdsall later sold the restaurant. He also claims that he suffered physical, emotional, and psychological injuries and humiliation as a result of the alleged attack.

*Standard of Review*

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548; *accord, Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## DISCUSSION

*Claims Premised on the Fifth and Fourteenth Amendments*

■■■ Birdsall claims that Defendants Sanzo and Kenary "used an excessive and unreasonable amount of force" in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution as enforced through Title 42 United States Code §§ 1983 and 1988. It is axiomatic that in a civil action, the plaintiff bears the burden of proving all essential elements of a claim. *Ruggiero v. Krzeminski,* 928 F.2d 558, 562 (2d Cir. 1991). To be successful on a claim asserted under section 1983, "a party must prove that he or she was deprived of a right secured by the Constitution or by laws of the United States and that the person or persons depriving the party of the right acted under color of state law." *Id.* Defendants argue that Birdsall's claims under the Fifth and Fourteenth Amendments must be dismissed because he has failed to plead or prove the required elements.

*Fourteenth Amendment Claims*

■■■ Birdsall's Fourteenth Amendment claims appear to be predicated on a theory of substantive due process, because he alleges only the use of unreasonable force, rather than the absence of any procedural safeguards. It is well established that section 1983 "is not itself a source of substantive rights," but instead, simply provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *see also Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807,

127 L.Ed.2d 114 (1994) (affirming the view that section 1983 is not an independent source of federal rights).

Birdsall contends that his Fourteenth Amendment claims are predicated on violations of his First Amendment right to free speech. However, as the defendants note, the plaintiff does not discuss the First Amendment, freedom of speech, or freedom of expression in any version of the complaint. There are references to a conversation that the plaintiff had with the officers prior to the alleged use of unreasonable force, but no direct claims of a First Amendment violation.

■ In any event, the Fourth Amendment, rather than the Fourteenth Amendment, is the appropriate source of constitutional protection for claims of unreasonable or excessive use of force employed by law enforcement officials during arrests. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Allegations of false arrest or malicious prosecution have also been held to be within the contours of the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); *Graham v. Connor*, 490 U.S. at 395, 109 S.Ct. 1865 ("All claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment"); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 115 (2d Cir.1995) (noting that the Fourth Amendment provides the source for a § 1983 claim premised on a person's arrest); *Lennon v. Miller*, 66 F.3d 416, 423 n. 2 (2d Cir.1995) (holding that false arrest and malicious prosecution claims are

within the scope of the Fourth Amendment).

■ Birdsall fails to plead any violation of his First Amendment rights and yet the First Amendment is the only source of substantive rights that Birdsall argues supports his Fourteenth Amendment claims. Accordingly, the Amended Complaint fails to state a claim for violation of Birdsall's Fourteenth Amendment rights and summary judgment is therefore entered in favor of defendants on the Fourteenth Amendment claims.

*Fifth Amendment Claims*

It is unclear whether Birdsall's Fifth Amendment claims are premised on the Due Process Clause or the Takings Clause. In either case, Birdsall's claims cannot be sustained.

■ The defendants argue that Birdsall's Fifth Amendment due process claims should also be dismissed because the Due Process Clause of the Fifth Amendment applies solely to claims made against federal officials. *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952) (holding that the Fifth Amendment Due Process Clause "appl[ies] to and restrict[s] only the Federal Government."); *American Bankers Mortgage v. Fed. Home Loan Mortgage*, 75 F.3d 1401, 1406 (9th Cir.1996) (affirming the principle that the Fifth Amendment Due Process Clause applies only to the federal government). In a case such as this, where the defendants are *municipal*, rather than federal, officials, a due process claim under the Fifth Amendment cannot be sustained. *Haverstick Enterprises v. Financial Federal Credit*, 803 F.Supp. 1251, 1259 (E.D.Mich.1992).

■ Additionally, the tenor of Birdsall's pleadings suggest that he may also be alleging an unconstitutional construc-

tive "taking" of his property inasmuch as the conduct of the officers allegedly resulted in a loss of business at, and the eventual sale of, his restaurant. Based on the evidence submitted by Birdsall, there is no basis to sustain a Fifth Amendment takings claim. Generally, to be compensable as unlawful, a governmental taking must deprive the property owner of all economically viable use of the property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (holding that when an owner sacrifices all economically beneficial use of property in the name of common good, he has suffered a taking). Here, Birdsall alleges that the defendants' conduct resulted in the loss of restaurant business. As a result of the loss of business, Birdsall sold the restaurant. Birdsall has presented no evidence that the defendants' alleged conduct stripped him of *all* economically viable use of his restaurant. While business may have decreased, the property maintained viable use as a restaurant. Thus, Birdsall has not made out a claim for an unconstitutional governmental taking.

Accordingly, summary judgment is granted in favor of the defendants on Birdsall's Fifth Amendment claims.

### Unlawful Arrest and/or Seizure Claims

### Federal Constitutional Claims

The defendants argue that Birdsall is barred from bringing an action for false arrest because the criminal case that arose from his arrest did not terminate in his favor. Specifically, the charges brought against Birdsall were not dismissed, but rather, were nolled by the state in consideration of the plaintiff's charitable contribution. *Def. Memo. in Support of Motion, Exh. A, Tr. at 2.* Defendants argue that a nolle cannot be considered a "favorable" disposition for the purposes of bringing a section 1983 civil rights claim. Plaintiff contends that he was unaware that, by

agreeing to give a charitable contribution, the charges would be nolled and he would be precluded from bringing a section 1983 claim.

It is well settled in the Second Circuit that in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor. *Roesch v. Otarola*, 980 F.2d 850, 852 (2d Cir.1992). A criminal proceeding terminates in favor of the plaintiff only when its "final disposition is such as to indicate the accused is not guilty." *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980). A nolle, like "[a]n adjournment in contemplation of dismissal,... involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt." *Id.*

The plaintiff's arguments that he was not aware that he was precluding a section 1983 claim by agreeing to a nolle are immaterial. The case law requiring favorable disposition contains no state-of-mind exception.

Because Birdsall has failed to show that the underlying criminal proceeding terminated in his favor, he is barred from filing a section 1983 false arrest or malicious prosecution claim. Accordingly, summary judgment shall enter in favor of defendants on Birdsall's federal false arrest claim.

### State Constitutional Claims

To date, the Connecticut appellate courts have not defined the contours of an unlawful arrest claim under Section 9 of the Connecticut Constitution. Under such circumstances, a federal court must predict how the highest state court would rule by considering all the data the highest court of the state would use. *Standard*

*Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F.Supp. 164, 190–91 (D.Conn. 1984) (internal citation omitted).

 In *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), the Connecticut Supreme Court established a cause of action for monetary damages brought directly under provisions of the state constitution, thus recognizing that violations of sections 7 or 9 of the First Article were compensable under the state constitution. The justices of the Connecticut Supreme Court, guided by the United States Supreme Court's reasoning in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), determined that an analogous cause of action existed under the state constitution. *Binette*, 244 Conn. at 35–47, 710 A.2d 688.

Because the Connecticut Supreme Court fashioned the state judicial remedy with considerable reliance on the United States Supreme Court's *Bivens* rationale, however, it stands to reason that the Connecticut Supreme Court would also follow federal precedent when determining the parameters of an unlawful arrest claim under the state constitution. The state Supreme Court is likely to look to federal court decisions analyzing section 1983 false arrest and malicious prosecution claims. Thus, the Connecticut Supreme Court is likely to hold that, in order to state a false arrest or malicious prosecution claim under the state constitution, the plaintiff must allege and prove favorable resolution of the underlying criminal charge. Because Birdsall's charges were nolled, he would be barred from seeking redress under the Connecticut Constitution for the same reason that his federal false arrest claim failed. Accordingly, summary judgment shall enter in favor of defendants on Birdsall's state false arrest claim.

*Claims Against Joseph Croughwell*

Birdsall claims that the infringement of his civil rights and injuries to his person or property were "promoted and/or encouraged by the policy of the Defendant Joseph Croughwell" in that Croughwell and his agents and employees "failed to adequately train and/or supervise" the defendant officers in the performance of their duties. Second Am. Compl. at 14, ¶ 16. Specifically, Birdsall claims that Croughwell "failed to have in place, force and effect sufficient policies, practices, procedures and guidelines pertaining to the effectuation of stops, detentions, arrests, seizures, and custody over suspects, and their conduct as police officers so as to enable them to take timely and reasonable measures to prevent the excessive use of force." *Id.* at ¶ 18.

 Assuming *arguendo* that Birdsall's Fourth Amendment rights were violated, there is no basis to impute liability to Croughwell for the actions of his subordinates. Supervisory liability under section 1983 cannot be based on respondeat superior. *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir.1998). It is well settled in the Second Circuit that claims against supervisors for the constitutional torts of their supervisees may attach only if: "(1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event." *Id.* at 112.

 To date, Birdsall has presented no evidence that Chief Croughwell initiated a policy or custom requiring or permitting the use of excessive force in the performance of police duties. Birdsall has presented no evidence of other incidents

similar to the instant case to suggest that the alleged use of undue force was a standard practice of the Hartford Police Department. He has presented no evidence to show that Chief Croughwell encouraged or tacitly condoned the use of excessive force by those under his supervision. Nor has there been any evidence to show that Chief Croughwell was grossly negligent in managing the defendant officers. Birdsall has merely described the alleged conduct of the defendant officers and speculated that the conduct resulted from improper supervision by Chief Croughwell. "A single incident alleged in a complaint, especially if it involved only actors below the policy making level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993). Birdsall has presented no official manuals or other training materials, nor has he provided deposition testimony of anyone who might establish that the use of undue force was condoned and encouraged by Croughwell. The mere assertion of "such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Id.* (internal citations omitted).

 Moreover, when it is alleged that a failure to provide adequate training resulted in a constitutional deprivation, the complainant must identify a particular deficiency in training that "actually caused" the constitutional injury. *City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, Birdsall has failed to provide any concrete evidence to support his claims of liability against Chief Croughwell. His complaint provides only speculative statements stemming from the circumstances of his arrest, and fails to support a constitutional injury for which redress is required.

Accordingly, summary judgment shall enter against plaintiff on all claims directed at Croughwell.

*Plaintiff's Claims Against the City of Hartford*

Birdsall has alleged claims against the City of Hartford for constitutional violations pursuant to section 1983, for state tort claims under section 52–557n of the Connecticut General Statutes, for indemnification of the defendant officers and defendant Croughwell under Connecticut General Statute § 7–465, and for all injuries done by the defendant officers.

 Although municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018.

 To prevail on a section 1983 claim against a municipality, a plaintiff must plead and prove the following: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983) (citing *Monell*). Absent a showing of a chain of causation between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against a municipality. *See id.*

 The standards for pleading such an injury are stringent and exacting.

It is insufficient for a plaintiff simply to identify conduct attributable to the municipality. Instead, "the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (internal citations omitted). To meet this standard, a plaintiff should present evidence of a municipality's policy beyond a "mere single, isolated incident" by non-policymaking employees. *Stengel v. City of Hartford*, 652 F.Supp. 572, 574 (D.Conn.1987) (internal citations omitted). Courts that have considered the issue have held that "[s]ome degree of specificity is required in the pleading of a custom or policy on the part of a municipality. Mere conclusory allegations devoid of factual content will not suffice .... [A] plaintiff must typically point to facts outside his own case to support his allegation of a policy on the part of a municipality." *Thurman v. City of Torrington*, 595 F.Supp. 1521, 1530 (D.Conn.1984).

■ In the instant case, Birdsall has done no more than plead conclusory allegations. There is no evidence, or even any claims, that pertain directly to the policies and customs of the City of Hartford. Instead, the plaintiff simply reiterates the allegations of wrongdoing made against defendants Sanzo and Kenary. In so doing, Birdsall attempts to impute liability to the City of Hartford for the alleged wrongdoing of its employees. As stated above, *Monell* does not allow a claim of municipal liability based upon a theory of respondeat superior. Birdsall does not allege that there was a specific municipal policy that was the root cause of his injuries, nor does he suggest that there was a custom of constitutional abuses beyond the incident alleged in his complaint. For these reasons, summary judgment shall enter

against plaintiff on his claims against the City of Hartford.

*Infliction of Emotional Distress*

*Negligent Infliction of Emotional Distress*

■ Connecticut courts have consistently held that, "in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 815 A.2d 119 (2003).

■ The physical injuries alleged by Birdsall in paragraph 11 of the amended complaint demonstrate a degree of unreasonable risk, of which the defendants should have been aware, sufficient to give rise to a claim of negligent infliction of emotional distress. Because the defendants deny the allegations and any purported injuries, genuine issues of material fact exist with regard to this claim. Because this claim requires a determination of the facts involved in the alleged incident, it is appropriate to reserve the issue for a jury determination. Accordingly, the motion for summary judgment, as it relates to the negligent infliction of emotional distress claim, is denied.

*Intentional Infliction of Emotional Distress*

■ In order to prevail on a claim of intentional infliction of emotional distress under Connecticut law, a plaintiff must prove the following four elements: (1) that defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was likely result of their conduct;

(2) the conduct was extreme and outrageous; (3) the defendants' conduct was the cause of the plaintiff's distress; and (4) the plaintiff suffered severe emotional distress.

To prove that the alleged conduct was extreme and outrageous, the plaintiff must show that it " 'exceed[ed] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' " *DeLaurentis v. City of New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991).

▆▆▆▆ Under Connecticut law, before a claim for intentional infliction of emotional distress may be submitted to a jury, the court must first determine that the conduct may be reasonably regarded as "extreme and outrageous so as to permit recovery." *Reed v. Signode Corp.,* 652 F.Supp. 129, 137 (D.Conn.1986). Only when the court determines that reasonable minds may differ should the claim be submitted to a jury. *Id.* In the instant case, Birdsall alleges that the defendant officers "spun [him] around and pushed [him] down" over the food preparation table in the restaurant's kitchen. Pla. Memo. Exh. A, Pl. Dep., p. 77, lines 11–12. Birdsall alleges that one officer then hit him repeatedly with a flashlight. *Id.,* lines 22–23. Birdsall claims that his lip was injured, his face was bruised and swollen, and two front teeth were loosened by the alleged attack. *Id.,* p. 83, lines 13–20. Such conduct by police officers could be judged extreme and outrageous.

Defendants contend that, regardless of whether the alleged conduct was extreme or outrageous, plaintiff cannot prevail on a claim of intentional infliction of emotional distress because he has failed to establish that he suffered severe emotional distress. Specifically, defendants rely on Birdsall's statement in a deposition that he did not seek medical treatment as evidence that he did not suffer from emotional distress. When asked by defendants' counsel if he had sought counseling for any emotional distress caused by the alleged incident, Birdsall responded, "No. I should." Def. Memo., Exh. I, Pl. Dep., p. 114, line 4.

It is not clearly established that failure to seek medical treatment precludes a showing of severe emotional distress sufficient to establish a claim of intentional infliction of emotional distress. Defendants rely on two District of Connecticut cases to support their proposition that, in the absence of any medical treatment, the distress alleged by the plaintiff cannot be considered serious enough to warrant a finding of severe emotional distress. In one of these cases, *Reed v. Signode Corporation,* 652 F.Supp. 129 (D.Conn.1986), the court granted a motion for summary judgment, noting that the plaintiff "was neither treated nor did he seek medical assistance for the distress he allegedly suffered." *Id.* at 137. In another, *Almonte v. Coca–Cola Bottling Company of New York,* 959 F.Supp. 569 (D.Conn.1997), although the court acknowledged that "[i]t is not clear whether a plaintiff must seek treatment to maintain a claim of severe emotional distress under Connecticut law," it considered the absence of medical treatment in tandem with the facts alleged by the plaintiff. *Id.* at 575–76.

▆▆▆▆ In the instant case, Birdsall concedes that he did not immediately seek mental health treatment, but that fact alone does not bar his claim. Just as the fact of treatment is not sufficient to prove the existence of severe emotional distress, the absence of treatment does not preclude proof of severe emotional distress. Birdsall contends that he has suffered from memory loss and anxiety since the alleged incident. Pla. Memo., Exh. A, p. 51, lines 5–6, p. 112, lines 12–19. Connecticut

courts have held that emotional distress is severe when it reaches a level which "no reasonable person could be expected to endure." *Mellaly v. Eastman Kodak,* 42 Conn.Supp. 17, 597 A.2d 846 (1991). The symptoms described by the plaintiff—memory loss and anxiety—are sufficiently serious that a reasonable jury could find for the plaintiff on this claim.

Because genuine issue of material fact exist regarding plaintiff's claims of negligent and intentional infliction of emotional distress, defendants' motion for summary judgment with respect to these claims is denied.

*Gross Negligence*

 Although Connecticut does not recognize gross negligence as a separate basis of liability, *see Decker v. Roberts,* 125 Conn. 150, 157, 3 A.2d 855 (1939), it is frequently coupled with claims for recklessness, which are a recognized basis of tort liability. *See Shay v. Rossi,* 253 Conn. 134, 181, 749 A.2d 1147 (2000). Birdsall seeks damages for the officers' "recklessness and gross negligence." Specifically, Birdsall alleges that the officers accused him of serving alcohol to minors without cause, assaulted him before determining if he posed a threat of harm, and falsely charged him with breach of the peace. Birdsall seeks to impute liability to the officers in both their official and individual capacities.

Birdsall alleges that the officers accused him of serving alcohol to minors without adequately canvassing the premises. Plaintiff's Obj., Exh. A, p. 69, ¶¶ 5–17. Birdsall further claims that the officers did not determine if he posed an actual threat of harm before they used force with him in the restaurant's kitchen. Finally, Birdsall contends that he was falsely charged with breach of the peace. The officers' conduct, Birdsall contends, was sufficiently reckless and wanton to impute liability to the offi-

cers. The officers deny that their conduct exceeded the scope of their authority. Because genuine issues of material fact exist regarding the parties' conduct during the incident, it is appropriate to reserve this determination for jury consideration. Accordingly, the defendants' motion for summary judgment on plaintiff's recklessness claim is denied.

CONCLUSION

For the forgoing reasons, the defendants' motion for summary judgment is granted in part and denied in part.

It is so ordered.